## ALBERT E. GREER v. STATE.

No. A-10909. Dec. 22, 1948.
Rehearing Denied Jan. 12, 1949.
(201 P. 2d 274.)

Porter & Porter, of Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and John S. Moss, County Atty., Wagoner County, of Wagoner, for defendant in error.

BAREFOOT, P. J. Defendant, Albert E. Greer, was charged jointly with Katherine Greer, his wife, and Ben E. Ryan, his wife's brother, in the county court of Wagoner county, with the unlawful possession of intoxicating liquor, to-wit: sixteen (16) quarts of whisky and gin, and twenty pints of whisky. Before the trial commenced, the case was dismissed as to the defendant Ryan for the reason that he was in the United States armed forces, and not present. The other defendants were tried, and the jury found the defendant Katherine Greer not guilty. The defendant Albert E. Greer was convicted and sentenced to pay a fine of $350, and to serve a sentence of 90 days in jail. From said judgment and sentence he has appealed.

Defendant in his brief says:

"The sole question here presented is: Was the application (affidavit) for the search warrant and the search warrant itself sufficient under the law to make the search and obtain the evidence upon which plaintiff in error was charged and tried and convicted?"

In order to properly consider this question it is necessary to give a brief statement of the facts as revealed by the record.

A search of premises owned and occupied by defendant near the city of Wagoner was made by the sheriff, undersheriff and three deputy sheriffs of Wagoner county on December 14, 1946. The premises were described in the affidavit and search warrant used in conducting the search as follows:

"That portion of the northeast quarter of the northeast quarter of section 19, township 16 north, range 19 east, lying and situated north and east of U. S. Highway No. 69, containing 3/4 of one (1) acre, more or less, situated in Wagoner County, Oklahoma."

Defendant operated the Skyline Club which was a public place where the public came to be served food and drink, and to dance. The Skyline Club was located in a one-story cement block building on the ground described in the affidavit and search warrant, outside the city limits, and had a Neon lighting around the building under the eaves, and a large sign "Skyline Club" that could be plainly seen from the highway, day or night. It was in this building that all of the intoxicating liquor described in the information was found. Defendant and his wife slept in a nearby, separate building, which was also located on the property described in the search warrant, and ate their meals at the Skyline Club.

The officers testified that on the date above stated, they went to the Skyline Club for the purpose of searching the same, about 10:30 p.m., and that they had the search warrant, as above stated. Mr. Jeffers, the undersheriff, and Sheriff Hall went to the front door, or main entrance and the three deputy sheriffs went to the rear door.

Mr. Jeffers testified that he had the search warrant, and as he stepped in the Club the doorman, Mr. Ryan, met him and told him: "You can't go in, buddy, without a pass." He showed him the search warrant, and he and the sheriff went on in. There was very dim lighting in the place, and witness testified that when he first entered the building he could not recognize anyone four feet away. He asked for Mr. Greer, and stated that it was possibly two or three minutes after they entered the

Club before he got to Mr. Greer to serve the search warrant, but that he served it on Mr. Greer. He heard someone knocking on the rear door, and heard glass breaking, and he and the sheriff started to the rear of the building. They met Mrs. Greer in the hall-way between the main club room and the kitchen, with a bushel basket full of bottled liquor. There were approximately 200 people in the Club, eating, drinking and dancing, and quite a number of them appeared to be intoxicated. They found liquor in the booths and on the bar; there were four or five dozen whisky glasses on the bar; empty beer bottles, and whisky bottles partly filled on the tables and on the bar, and he named several brands of whisky that he observed in pint bottles sitting on the tables. While they were searching the place and gathering the liquor Mr. Greer left, and could not be located when the officers were ready to leave. He came in to the sheriff's office later. All of the liquor found was in the Skyline Club.

G. F. Gartner, deputy sheriff, testified that he went into the Skyline Club through the kitchen door, and that it was opened from the inside. There were around 200 people present at the Club when the officers arrived. Mr. Greer was behind the counter, or front bar, and on the back bar witness saw different sized glasses, and two partly empty "fifths" of whisky. He observed empty whisky bottles, Seven-Up bottles, and empty whisky and hi-ball glasses in the booths.

Chester Hall, the sheriff, testified that he followed Mr. Jeffers when he entered the Skyline Club, and that he saw Jeffers serve the search warrant on Mr. Greer, and corroborated Mr. Jeffers with reference to meeting Mrs. Greer in the hall-way with the bushel basket full of whisky.

It is unnecessary to further quote from the evidence offered by the state. Both the defendant and his wife testified, but their evidence was such that it does not affect the issue here presented.

From the above statement, and the previous decisions of this court, we are of the opinion that the court did not err in overruling the motion to suppress the evidence presented in this case. Nor was the defendant in any way deprived of his fundamental rights and constitutional guarantees, as provided by section 7, article 2, of the Constitution of Oklahoma, and Amendment article 5 of the Constitution of the United States.

In the first place, under the previous decisions of this court, as applied to the facts here presented, it was not necessary for the officers to have a search warrant in order to search the Skyline Club. It was a place of public resort, and the officers, the same as any other citizen, had the right to enter it, and, if after entering, they saw the commission of a misdemeanor in their presence, as they did in the instant case, they had the right under 37 O.S. 1941 § 89 to arrest the offender and search his person and his immediate surroundings.

In the case of Overturf v. State, 69 Okla. Cr. 303, 102 P. 2d 623, 624, it is said:

"Furthermore, in this case the officers did not need a search warrant. The place of business * * * was open to the public; the public was invited to enter their bar and purchase drinks of various kinds. The liquor which was seized was sitting on the floor in plain sight of the officers. Under circumstances such as these, no search warrant was necessary as the offense was committed in the presence of the officers. See White v. State, 45 Okla. Cr. 103, 281 P. 824; Grimes v. State, 65 Okla. Cr. 99, 83 P. 2d 410; Martin v. State, 43 Okla. Cr. 273, 277 P.

950; Rhodes v. State, 46 Okla. Cr. 219, 287 P. 812."

In Clasby v. State, 78 Okla. Cr. 45, 143 P. 2d 430, 433, it is said:

"Under this testimony, we do not think it was the duty of the court to sustain the motion. These officers were in a public place, where they had a right to be. They saw bottles of whisky in their presence. They had a right to investigate, and they found approximately two quarts of liquor. They made no arrest until later. The proof revealed that the liquor was in a place operated and managed by the defendant. The amount of liquor found was by the law prima facie evidence of possession with the intent to sell, convey, or otherwise violate the law. S.L. 1933, Chap. 153, p. 339, sec. 3, 37 O.S.A. 1941 § 82. There was no evidence offered to rebut this presumption."

In the case of Passmore v. State, 87 Okla. Cr. 391, 198 P. 2d 439, 441, the facts were almost identical with the facts here presented. It was there held:

"However, under the evidence presented in this case, it was not necessary for the sheriff to have a search warrant to lawfully search defendant's place of business. When he entered the Club, which was open to the public and which the sheriff and other officers had the right to enter the same as any other citizen, he saw violations of the law being committed in his presence by the defendant.

"37 O.S. 1941 § 89 provides:

" 'When a violation of any provision of this Chapter, shall occur in the presence of any sheriff, constable, marshal, or other officer having power to serve criminal process, it shall be the duty of such officer, without warrant, to arrest the offender and seize the liquor, * * *.'

"In construing this section of the statute, it has often been held by this court that where a misdemeanor is committed in the presence of an officer, he has the right to arrest without a warrant, and after the arrest,

to search the defendant and his immediate surroundings. Overturf v. State, 69 Okla. Cr. 303, 102 P. 2d 623; Brown v. State, 74 Okla. Cr. 246, 125 P. 2d 234; Mullins v. State, 75 Okla. Cr. 417, 133 P. 2d 239; Clasby v. State, 78 Okla. Cr. 45, 143 P. 2d 430."

We are, therefore, of the opinion that the judgment of the county court of Wagoner county should be affirmed. It is so ordered.

JONES and BRETT, JJ., concur.