Onis Wilford WOODS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12476.

Criminal Court of Appeals of Oklahoma.

Oct. 9, 1957.

As Corrected Oct. 30, 1957.

Jack L. Spivey, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

The defendant was charged in the Court of Common Pleas of Oklahoma County with the offense of unlawful possession of 31 pints of tax paid liquor, tried, convicted and sentenced to serve 30 days in the Oklahoma County jail and pay a fine of $50.00.

To this charge the defendant interposed a motion to suppress the evidence based on the contention that the evidence obtained was by unlawful search of defendant's automobile, and thus incompetent to sustain a conviction and that court erred in overruling motion to suppress. Other assignments of error are set forth by defendant but not discussed and it is conceded by defendant he relies solely upon the grounds that motion to suppress should have been sustained.

The evidence presented on motion to suppress established that Police Officer Mead was in pursuance of his duties as a member of the vice squad of the Oklahoma City police department; was in the hall of the Melrose Apartment House and met the defendant who was carrying a newspaper pressed tightly under his arm. Officer Mead testified he saw the defendant knock on a door; a person opened the door and defendant asked, "had he called him." He said that he did and at that time he slipped a pint of whisky out of the newspaper. The man handed him some money and defendant left. Officer Mead stated he followed defendant to his car, placed him under arrest. He and his partner proceeded to search the car. Officer Mead testified prior to the search he asked defendant if he had any more whisky in the car and defendant replied, "Yes." 31 pints of liquor were seized as a result of the search. Defendant admitted being in the apartment house hall with a newspaper under his arm and knocked on a door but said he was there looking for a friend. That his friend was not in and he went back to his car where an officer approached him, shined a flashlight in his car and said, "I see you got whisky. You are under arrest", and defendant replied, "All right." The evidence is most conflicting but in our opinion was sufficient to justify the court in overruling the motion to suppress upon the theory a misdemeanor was committed in the officers' presence, supported by Officer Mead who testified he saw defendant hand the person a pint of

whisky and receive money in exchange. The evidence is ample to show the search was incident to a lawful arrest for sale of liquor committed in officer's presence.

■ In the case of Greer v. State, 88 Okl.Cr. 195, 201 P.2d 274, 277, the court held:

"Where a misdemeanor is committed in the presence of an officer, he has right to arrest without a warrant, and after arrest, to search defendant and his immediate surroundings."

To the same effect see Strategier v. State, 56 Okl.Cr. 11, 32 P.2d 1054; Tripp v. State, 73 Okl.Cr. 69, 118 P.2d 273; Fitzgerald v. State, 80 Okl.Cr. 43, 156 P.2d 628; Passmore v. State, 87 Okl.Cr. 391, 198 P.2d 439; Atkins v. State, 94 Okl.Cr. 137, 231 P.2d 406.

■ This court has held in innumerable decisions that it will not reverse the trial court upon question of fact where there is a conflict of evidence and there is competent evidence reasonably tending to support the finding of the trial court. As stated in the case of Scott v. State, 84 Okl. Cr. 171, 180 P.2d 196:

"Whether search and seizure from an automobile is reasonable, is, in its final analysis, to be determined as a judicial question, in view of all the circumstances under which it is made.

"The question of suppressing evidence being a judicial one, this court will not reverse the trial court upon a question of fact where there is a conflict in evidence, and there is competent evidence reasonably tending to support the finding of the trial court.

"Where a defendant is lawfully arrested, and his automobile searched, the search made incident to such lawful arrest is not an invasion of the defendant's constitutional rights."

It is apparent from the questions propounded by defense counsel that he attached much importance to the question of whether or not the officer could reasonably have determined that the bottle passed by the defendant contained an intoxicating liquor as to constitute the commission of a misdemeanor in the officers' presence. Officer Mead's testimony in that regard was as follows:

"Q. Now, Officer Mead, you didn't know that the man had actually made a sale, isn't that right? A. Repeat that question, please.

"Q. As a matter of fact, you merely had a suspicion, some suspicion that the man might have delivered some whisky. Now, that is all there was to that, isn't it? You didn't know for sure? A. I could not swear that it was whisky in the bottle. It appeared to be a whisky bottle, and there was some sale made, took place, because I saw what I thought to be whiskey change into the man's hand and money go into the defendant's hand.

"Q. Now, what kind of a label was on the bottle? A. I am not—I can't remember. I think it was Ancient Age. I am not sure.

"Q. Well now, Officer Mead, were you close enough to see whether it was Ancient Age, or is that just speculation?

"Q. I was close enough to see, if I could remember just exactly what brand it was, but I don't remember.

"Q. You think it was Ancient Age? A. I wouldn't swear to that.

"Q. Could it have been Gilbey's— was it gin or whisky? A. It was whisky.

"Q. Wine, whisky, or gin, now? A. It was whisky.

"Q. And what do you base that on, by the way the bottle looked to you? A. Well, just my past experience of observing whisky bottles and gin bottles. I never saw gin in a brown bottle.

"Q. Now, Officer Mead, you have never worked in the whisky— A. I have worked whisky. I worked whisky with Lieutenant Caldwell and also Fred Neal.

"Q. Nevertheless, you arrested this man on suspicion of selling whisky and searched his car. That is the substance of it, isn't it? A. Arrested him on my belief that that was whisky in that bottle.

"Q. But you can't testify that you know it was whisky though, can you? A. I can't testify that I had it tested or anything to actually know it was whisky, no.

"Q. And you never did go back and find out whether it was whisky? A. No.

"Q. To justify the arrest, did you? A. No, sir:

"Mr. Sprivey: I believe that it all."

On recross examination:

"Q. Officer, you had worked the whiskey detail before, hadn't you? A. For a short period of time. I worked with Lieutenant Caldwell for about three weeks, and I worked with Fred Neal for about three weeks on whiskey.

"Q. You can recognize a bottle of whiskey without any difficulty, can't you? A. Yes, sir.

"Q. You think you can? A. Yes, sir.

"Q. And regardless of whether this may have been Ancient Age or Gilbey's, or Belmont, or Sunnybrook, or anything like that, was it or was it not, would you say, a popular brand of whiskey? A. It was—I would say— I think it was Ancient Age. I am not sure. It was whiskey. I know that.

"Q. So, immaterial of the label on it, to your knowledge, you believe it was a bottle of whiskey? A. Yes, sir.

"Q. And you assumed in a transaction like that, that that was all that was going on, was the sale and exchange of money for a bottle of whiskey? A. Yes, sir."

It is to be noted that the officer had difficulty in remembering the exact label but did testify he was close enough to see the label, thought it was Ancient Age, but didn't remember. This court is fully aware that mere suspicion is not sufficient to waive the necessity of a warrant but the testimony here is more than suspicion and reveals concrete testimony if believed, would be sufficient to sustain the court's finding. It was stated by this court in Griffin v. State, Okl.Cr.App., 210 P.2d 671, 672:

> "Because of the stringent laws against misbranding of merchandise and counterfeiting of labels (Tit. 78 O.S.1941) there is a legal presumption that a package contains the merchandise labeled thereon."

It would unjustly handicap officers in the performance of their duties for them to be so technically hamstrung as to make folly of the law. As a result of the foregoing, we feel that there was competent evidence in the record reasonably tending to support the findings of the court in connection with the motion to suppress that this court will not reverse nor disturb the same. Affirmed.

BRETT, P. J., and POWELL, J., concur.