The STATE of Oklahoma, Plaintiff in Error,

v.

Albert HAYGOOD, Defendant in Error.

No. A–12503.

Criminal Court of Appeals of Oklahoma.

May 7, 1958.

Rehearing Denied May 28, 1958.

Mac Q. Williamson, Atty. Gen., Robert A. Wilson, Pottawatomie County Atty., Clifford Stone, Jr., Asst. County Atty., Shawnee, for plaintiff in error.

Shelton Skinner, Shawnee, for defendant in error.

NIX, Judge.

The record reflects the following circumstances out of which this case arises.

On the night of February 9, 1957, the sheriff of Pottawatomie County accompanied by four deputies were making rou-

tine checks on this Saturday night. They visited several places prior to going to defendant's home. The officer stated they had noticed traffic coming to and from the vicinity of the defendant's premises. They drove into defendant's driveway about 10 p. m. and stopped about 30 or 40 feet from defendant's porch. One of the officers, as planned, got out of the car and went to the front door of defendant's home. Defendant came to the door and the officer asked for a pint of whisky. Defendant answered "Okay." The officer discussed the brand and price. Defendant went into the rear of his house and returned with a pint of whisky, which he delivered to the officer, receiving $5 in exchange. At this point the testimony differs between the officer and the defendant. Ernest Smith, the officer making the purchase, testified as follows:

"A. I said 'I am Ernest Smith from the Sheriff's office,' and I said that I would have to place him under arrest, and that there was some more men in the car who wanted to talk to him. I told him we would have to put him under arrest.

"Q. What did Mr. Haygood say to you? A. He said, 'Wait a minute until I put my shoes on.' "

In this regard the defendant testified as follows:

"Q. When you came back with the pint of liquor, did you open the screen door, or did Mr. Smith open it? A. I opened it.

"Q. Did you give him the pint of liquor? A. Yes, sir.

"Q. What did he give you in exchange for the pint of liquor? A. A five dollar bill.

"Q. What did Mr. Smith then say to you? A. He wanted to know if my name was Haygood, and I said, 'Yes.'

"Q. Then, what did he say? A. He said, 'There are some men out in the car who want to talk to you.'

"Q. At that time and up until that moment, had Mr. Smith said anything else to you at all? A. No, sir.

"Q. What did you do after Mr. Smith asked for you if your name was Haygood and you replied in the affirmative and after Mr. Smith then said, 'There are some men out in the car who want to talk to you?' A. I said, 'As soon as I get my shoes on.'

"Q. After you made that remark, what did you do? A. I went into the dining room to put on my shoes.

"Q. Did you get them on? A. All of these men came walking into the door and into the room."

At this point the record discloses that the other four officers invaded defendant's house, asked that the $5 bill be returned and proceeded to search. According to defendant's testimony the following occurred:

"A. After they got in, Mr. Curtright, the Sheriff, said that he wanted that five dollar bill that Casey gave me. I gave it to him, and he said it was marked.

"Q. What else did Mr. Curtright say? A. He said, "We are not going to tear up your place, we are going to look it over; we have work over here to do and some in Shawnee.

"Q. What reply did you make to Mr. Curtright after he made that statement to you? A. I did not think that there was anything more for me to say.

"Q. Did you answer him? A. I don't think I did.

"Q. What did the officers then do? A. They went to search all over the house and furniture and they examined everything.

"Q. Did any one of the five officers ever ask you for permission to search? A. No, sir.

"Q. Did you ever give any one or all of them consent for them to search? A. No, sir.

"Q. Did they find any whisky in your house? A. Yes, sir."

Officer Smith's testimony related a different story as follows:

"Q. At the time you advised Mr. Haygood that you were Casey Smith from the Sheriff's office and that he was under arrest, then what transpired? A. He said, 'Wait until I put my shoes on,' and I said 'There is some more men in the car who want to come in,' and he said 'Okay,' and I motioned for them to come in and they came in.

"Q. What did Mr. Haygood do when the other fellows came in the house? A. He was putting his shoes on.

"Q. Then what happened after the officers were in the house? A. Bruce Curtright, the Sheriff, had told Mr. Haygood that he would have to give us the five dollars back.

"Q. Did the Sheriff succeed in getting it back? A. Yes, he gave him the five dollars back.

"Q. And did you search the house at this time? A. Yes, after we all went in.

"Q. What was revealed from the search? A. Eight pints of whiskey—we brought one—and one pint of Yellowstone and seven pints of Old Bourbon.

"Q. Where has this whiskey been since the 9th day of February, 1957?"

Also, Officer Hibbard testified as follows:

"Q. Did you have any conversation with Mr. Haygood? A. Yes, sir.

"Q. Tell the Court what that conversation was? A. We talked about the raid there, and he said, 'Go ahead, you won't find anything.'

From this set of facts the defendant was charged with the illegal possession of intoxicating liquor to which charge the defendant entered a plea of not guilty and was released on bond on the 12th day of February, 1957. On the 5th day of April defendant filed a motion to suppress the evidence, to which the state filed a response.

A hearing was had on the 9th day of April at which time the trial court permitted defendant to withdraw his plea of not guilty for the purpose of taking testimony on the motion to suppress. The state objected to this procedure, was overruled and saved exception. The motion to suppress was sustained and the state appealed on reserved question of law.

The brief of the state recites three (3) assignments of error as follows:

"I. The trial court below abused its discretion in allowing the defendant, Albert Haygood, to withdraw his former plea of 'Not Guilty' for the purpose of presenting testimony on this motion to suppress the evidence.

"II. The trial court below erred in sustaining the evidence and testimony of the arresting officer which pertained to the sale of intoxicating liquor observed in his presence.

"III. That the trial court sustained all the evidence, both physical and parol, obtained by the officers on the grounds that such search and seizure was in violation of the defendant's constitutional rights and guarantees."

In support of the state's first assignment of error he relies upon the rule announced in previous cases of this court wherein it was said:

"Where defendant pleads to the merits of a criminal action he waives all objections to the illegality of his arrest."

See McGilvery v. State, 50 Okl.Cr. 376, 298 P. 312; Keeler v. State, 24 Okl.Cr. 206, 217 P. 228; Hoskins v. State, Okl.Cr., 286 P.2d 293.

■ Your writer is thoroughly familiar with this line of cases, but they are not deemed applicable in the case at bar. It is to be noted that the rule announced in the above cases, prior to the Hoskins case, involved the issuance of a warrant, an instrument by which the state was bound. The irregularity of the warrant was noticeable upon its face and defendant had knowledge

that the state intended to rely thereon, and in that event, it was the duty of the defendant to raise its illegality forthwith and before invoking the court's jurisdiction by pleading thereto. Even this application appeared harsh at times and could only be justified because it was always within the sound discretion of the court to permit a withdrawal of defendant's plea for the purpose of raising this question.

It was never intended that a strict compliance with this rule would be applicable to search and seizure without a warrant or evidence obtained thereby nor do we feel that the rule applies in a misdemeanor case where arrests are made without a warrant. To so hold would in many instances deprive defendant of his day in court as he would be unable to intelligently present an objection until he knew upon what the state relied. We feel that the best rule was adopted by this court in the case of Kelso v. State, 97 Okl.Cr. 215, 260 P.2d 864; White v. State, 81 Okl.Cr. 399, 165 P.2d 151:

> "An objection to evidence obtained by illegal search and seizure must be interposed at first opportunity and should be made either at beginning of trial by motion to suppress evidence or in course of examination as soon as it becomes apparent that state will rely thereon."

Irrespective of the application of the rule the sound discretion should always rest in the trial court to permit a withdrawal of defendant's plea for the purpose of hearing testimony on motion to suppress. A refusal by the trial court to grant such a request could be most prejudicial to defendant's right, but your writer can think of no occasion where the state would be prejudiced by such actions. It merely gives the defendant an opportunity to remove any doubt as to the timely presentation of his objection. If the facts justify affirmation of a motion to suppress they should be welcomed by the state's attorney and not be precluded on a mere technicality. It is as much the duty of the state's attorney as the attorneys for the defense to strengthen and

preserve the rights afforded under the Bill of Rights and many appeals to this court could probably be prevented if this practice was followed. It was justly within the wisdom and discretion of the trial judge to grant unto the defendant the right to withdraw his plea and hear evidence on the motion to suppress and certainly did not commit error in doing so.

The state contends by the second assignment of error that the trial court committed error in sustaining the motion to suppress as it pertained to the pint of whisky sold by defendant to the deputy sheriff, and for the third assignment of error that the trial court likewise erred in sustaining motion to suppress the evidence obtained by the search of defendant's residence.

This court has approved a long line of cases that the findings of the trial court on a motion to suppress the evidence on a disputed question of fact will be sustained where there is competent evidence in the record to support the findings. See Peterson v. State, Okl.Cr., 280 P.2d 1029; Chaney v. State, 94 Okl.Cr. 226, 233 P.2d 314. This court has long recognized that it is the function of the trial court to ferret out the truth and to determine conflicts in the evidence and his findings will not be disturbed by this court if supported by competent testimony. In the instant case the trial court made a finding of fact as to both motions setting forth his reasoning, the pertinent part of which read as follows:

> "That neither Officer Smith nor any of the other officers or persons present on the defendant's premises within the curtilage of the home of the defendant and at the defendant's home arrested the defendant for any offense committed in the presence of said officer or officers and persons, if said officers and persons had a right to be where they were and that the motion to suppress insofar as the whiskey found in the home of the defendant and the testimony of the officers and persons who conducted the search of the defendant's home should be suppressed.

"The issues generally, as defined by the pleadings and the evidence, in favor of the defendant and against the plaintiff; that under the undisputed evidence the officers had a report that whiskey was being sold on the premises and at the house in question; that they went onto said premises and within the curtilage of the home of the defendant and then and there commenced search of the premises within the curtilage of the home prior to the time that any of said officers or persons; saw, observed, or found any whiskey or observed the violation of any law committed in the presence of any of said officers or persons; that said officers and persons were not armed with a search warrant or any other process but went to and upon the premises of the defendant for the purpose of learning whether or not whiskey was being sold there and to conduct some manner of form of search in violation of the defendant's rights and guarantees under Section 30, Article II, of the Constitution and the Statutes of the State of Oklahoma; that the defendant was not arrested that night at his home but on the contrary was arrested at a later date under the authority of the warrant issued in this cause; that under no theory advanced by the State or found by the Court in his independent research of the law did the officers and persons acquire or have the right to search all of the home of the defendant and that, the officers and persons having entered upon the defendant's premises and within the curtilage of the home of the defendant for the purpose of conducting a search thereof and having commenced their search prior to the time that they saw or observed either any whiskey or the violation of any law said search, illegal in its inception, was not ripened into a legal search of said premises, curtilage and home and the Court further specifically finds that the activities of Officer Smith in making the buy or in purchasing the pint of whiskey was nothing more or less than a continuation of the previously commenced search without authority of law and in violation of the defendant's rights and guarantees under the Constitution and statutes of this State."

We are in accord with the reasoning of the trial court as it pertained to the search and seizure of defendant's home. It is conceded by all parties concerned and this court has held in many cases that if defendant did commit an offense in the officer's presence, they would have been justified in searching defendant and his immediate surroundings after an arrest had been made. See Greer v. State, 88 Okl.Cr. 195, 201 P.2d 274; Farmer v. State, 86 Okl.Cr. 308, 192 P.2d 716.

■ However, in the instant case there was a conflict as to whether the defendant was placed under arrest after having sold a pint of whisky to Officer Smith who assisted in the search. Officer Smith said he informed the defendant he was being placed under arrest. This the defendant denies. If Officer Smith's testimony had prevailed, the search may have been justified. If defendant was not arrested, then it could not be contended that the search was incident to a lawful arrest. The record reflects that the defendant was not taken into custody until some days later at which time a warrant was issued for his arrest. In any event, it was the function of the trial court who heard the witness to determine the conflict and ascertain which he chose to believe. As there was competent testimony upon which the trial court relied, his finding will not be disturbed by this court as to the search of defendant's home and the seizure made therein. However, this court does not agree with the trial court as to the evidence obtained by Officer Smith through his purchase of a pint of whisky from the defendant. This case would have been tremendously simplified had the defendant been charged with the unlawful sale of a pint of intoxicating liquor. Though the sale was admitted, defendant contends that

the officer began an unlawful search when they entered defendant's yard and the purchase of the pint of liquor was no more than a continuation of the search which was illegal in its inception. With this we cannot agree. Certainly if the officers were trespassers the defendant would have been justified in demanding the officers to remove themselves from the premises, but instead, he voluntarily sold on officer a pint of liquor, thereby waiving his right to contend trespass or that the officers had no right to be there. This state under the provisions of our statutes, Title 37 O.S.1951 § 1 states in part:

"It shall be unlawful for any person, individual or corporation * * * to * * * sell, barter, give away * * * any liquors or compounds of any kind or description * * * which contains more than three and two-tenths (3.2%) per cent of alcohol, measured by weight, and which is capable of being used as a beverage."

There can be no doubt that this statute was admittingly violated. There can be no difference in the application of this law as to a sale to an individual whether he be an officer or not and this court has repeatedly held that it constitutes a crime to sell intoxicating liquor to an officer the same as it is to an individual. See Tipton v. State, 80 Okl.Cr. 49, 156 P.2d 825; Hood v. State, Okl.Cr., 270 P.2d 368. The fact that the officer was buying the liquor for the purpose of prosecuting the defendant makes little difference. This court held in Carr v. State, 96 Okl.Cr. 16, 248 P.2d 251:

"Where such accused is prosecuted for unlawful possession of intoxicating liquor, the State is not precluded by reason of the artifice practiced by the officer from offering in evidence the fruits of such search."

We are satisfied that any merit to the defendant's contention that the officer was where he had no right to be was destroyed when he held himself out as a bootlegger and voluntarily sold to Officer Smith a pint of liquor, and that the court erred in suppressing the evidence as to the pint of liquor being obtained by virtue of a sale by defendant. It would be pure mockery of the law to transact business with a person on your front porch, exchange liquor for money, consummate the deal and then be permitted to hide behind the skirts of the law by saying the purchaser was a trespasser. The voluntary sale on the part of the defendant automatically severed the protecting arm of the great provision of our Bill of Rights, promulgated not for shielding the law violator, but for the protection of law-abiding citizens even though in such endeavor it may at times protect the surreptitious and lawless. The question as far as it relates to this transaction is resolved in favor of the state. However, in the event the case is retried, the evidence will be confined to the pint of liquor sold by the defendant. Evidence obtained by the illegal search and seizure of defendant's home shall be excluded in accordance with this decision.

BRETT, P. J., and POWELL, J., concur.